FILED

2011 Nov-02  AM 10:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **TERESA RICE, o/b/o J.R.J.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.:  2:11-CV-1055-VEH** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER,** ) | |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |

---

## MEMORANDUM OPINION

Plaintiff Teresa Rice (hereinafter "Ms. Rice"), on behalf of her minor daughter
J.R.J., brings this action pursuant to Title XVI of the Social Security Act ("the Act").
She seeks review of a final adverse decision of the Commissioner of the Social
Security Administration (hereinafter "Commissioner" or "Secretary"), who denied her
daughter's application for Supplemental Security Income ("SSI").  Ms. Rice timely
pursued and exhausted her administrative remedies available before the
Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g) of the

Social Security Act.[1]

## FACTUAL AND PROCEDURAL HISTORY

J.R.J. was a 13-year-old female and had completed the seventh grade at the time of the 2008 hearing before the administrative law judge ("ALJ"). (Tr.185, 281). Ms. Rice claims that her daughter became disabled on July 31, 1999, due to a seizure disorder, a cognitive disorder, and migraine headaches. (Tr. 169, 185).

Ms. Rice filed an application for Title XVI SSI on behalf of her daughter J.R.J. on July 31, 2007. (Tr. 74). The claim was denied by the Commissioner on September 28, 2007. (Tr. 101). Ms. Rice filed a timely written request for a hearing on October 2, 2007. (Tr. 105). The hearing was held on August 8, 2008. (Tr. 21). The ALJ concluded that J.R.J. is not disabled and denied her application on October 30, 2009. (Tr. 96). Ms. Rice timely requested a review of the ALJ's decision on December 2, 2009. (Tr. 18). The Appeals Council denied Ms. Rice's request for review on January 22, 2011. (Tr. 1). The ALJ's decision thus became the Commissioner's final decision on that date. *Id*.

---

[1]In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI under the Act. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion that may relate to DIB claims should be considered to refer to the appropriate parallel SSI related authority. The same applies to citations of statutes or regulations found in quoted court decisions.

Ms. Rice filed a Complaint on March 23, 2011, which asks this court to review the ALJ's decision. (Doc. 1). Ms. Rice also filed a motion for leave to proceed *in forma pauperis* on March 23, 2011. (Doc. 2). This court granted the request to proceed *in forma pauperis* by margin entry on March 28, 2011. This court has carefully considered the record and affirms the decision of the ALJ.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper

3

legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for supplemental security income and establish an entitlement for a period of disability, a child must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The law defines children's "disability" as "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period or not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906.

In determining whether a child is disabled, the Regulations provide a three-step process. 20 C.F.R. § 416.924. The Commissioner must determine in sequence:

---

[2] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through September 1, 2011.

4

(1)    whether the child is engaged in "substantial gainful activity;"[3]

(2)    whether the child has a "medically determinable impairment" that is "severe" in that it causes "more than minimal functional limitations;" and[4]

(3)    whether the child's impairment or combination of impairments meets, medically, or functionally equals an impairment listed in the appendix to the regulations (the Listings of Impairments).[5]

*Henry v. Barnhart*, 156 Fed. Appx 171, 173 (11th Cir. 2005) (unpublished opinion) (citing to the applicable C.F.R. section); *accord Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999).

A medically determinable impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.   20 C.F.R. § 416.908.   It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not merely by a claimant's statement of symptoms.   *Id.*

Functional equivalence to a listing is found if the child's impairment–or combination of impairments–"results in 'marked'[6] limitations in two domains of

---

[3]  *Id.* at § 416.924(a).

[4]  *Id.* at § 416.924(c).

[5]  *Id.* at § 416.924(d); 20 C.F.R. pt. 404, Subpart P. app.1 (listing and describing impairments).

[6]  A "marked" limitation in a domain is found when a child's impairment(s) seriously interfere with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i).

5

functioning or an 'extreme'[7] limitation in one domain." 20 C.F.R. § 416.926a.  The

regulations establish six domains of functioning: (1) acquiring and using information;

(2) attending and completing tasks; (3) interacting and relating with others; (4)

moving about and manipulating objects; (5) caring for yourself; and (6) health and

physical well-being.  *Id.* at § 416.926a(b)(1)(i-iv).  If the impairment(s) does not meet

the duration requirements, or does not meet, medically equal, or functionally equal

one of the listings in the regulations, a finding of not disabled will be reached and the

claim will be denied.  *See id.* at § 416.924(d)(2).  The regulations recognize that an

impairment or combination of impairments may have effect in more than one domain;

thus, the SSA evaluates a child's impairments in any domain in which they cause

limitations.  *Id.* at § 416.926a(c).

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

Under step one of the three-part disability test for children, the ALJ found that

J.R.J. had not engaged in any substantial gainful activity at any time relevant to the

decision.  (Tr. 82).  Under step two, he found that J.R.J. suffered from the following

severe medically determinable impairments: seizure disorder and cognitive disorder,

not otherwise specified.  (Tr. 82).  Under step three, the ALJ found that J.R.J.'s

---

[7]An "extreme" limitation in a domain is found when a child's impairment(s)
very seriously interfere with the ability to independently initiate, sustain, or
complete activities.  20 C.F.R. § 416.926a(e)(3)(i).

impairments, individually and in combination, do not meet, medically equal, or functionally equal one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P, app. 1. (Tr. 83 (citing *§§* 416.924-26)).

The ALJ gave substantial weight to the opinion of J.R.J.'s treating physician, Dr. Cary Fu. (Tr. 87). The ALJ's reasoning for this included Dr. Fu's long history with the claimant, his direct observation and examination of her, and his capacity to review her entire medical history. *Id.*

The ALJ also afforded substantial weight to the opinions of the state agency medical physician, Dr. Richard Whitney, and the state agency psychologist, Dr. Gordon Rankart. *Id*. Although the ALJ acknowledged that they did not examine J.R.J. directly, he found that they provided specific reasons for their conclusions which were grounded in evidence. *Id*. Additionally, the ALJ found that the opinions of Drs. Whitney and Rankart were internally consistent and consistent with the record. *Id*.

The ALJ further gave great weight to the opinions of Dr. Daniel Marullo and Dr. Cryshelle Patterson. *Id*. The ALJ's reasoning for this included their direct observation and examination of J.R.J., their opportunity to review J.R.J.'s entire medical history, and their opinions' internal consistency and consistency with the record. (Tr. 88). The ALJ credited the testimony of Ms. Rice with little weight

7

wherever he found her allegations were contradicted by objective medical evidence and J.R.J.'s testimony.  (Tr. 89, 90-91, 92, 94).

The ALJ determined that J.R.J. has no limitation in three of six functional domains:  interacting and relating with others, moving about and manipulating objects, and caring for herself.  (Tr. 92-94).  He also determined that J.R.J. has a less than marked limitation in three of six functional domains:  acquiring and using information, attending and completing tasks, and health and physical well-being.  (Tr. 89, 90, 95).  Upon determination that J.R.J. has no marked or extreme limitation in any functional domain, the ALJ concluded that J.R.J.'s impairments in combination do not result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning.  (Tr. 95).  The ALJ accordingly ruled that J.R.J. is not disabled.  (Tr. 96).

## ANALYSIS

The court can reverse a finding of the Commissioner if it is not supported by substantial evidence.   42 U.S.C. § 405(g).  "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding."  *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th

Cir. 1980)).[8]  Ms. Rice asserts that "substantial evidence does not support" the ALJ's decision to deny disability benefits, and that "improper legal standards were applied" by the ALJ.  (Doc. 8 at 3).

## A. The ALJ's conclusion that J.R.J. was not disabled is supported by substantial evidence.

### 1. Migraine Headaches as Alleged Severe Impairment

A decision is not based on substantial evidence if it focuses on one aspect of the evidence while disregarding the remainder.  *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).  A medically determinable impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not merely by a claimant's statement of symptoms.  20 C.F.R. § 416.908.

Contrary to the argument put forward by Ms. Rice, the ALJ did not disregard the possibility that J.R.J.'s headaches are a severe impairment.  (Doc. 8 at 8). Substantial evidence supported the ALJ's conclusion that J.R.J.'s headaches are not a severe impairment.  (Tr. 82).  J.R.J. and Ms. Rice  testified that the headaches are treatable with over-the-counter painkillers and rest.  (Tr. 28, 63).  They also testified that J.R.J.'s headaches sometimes occur during school and lead her to call Ms. Rice

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

9

to bring her home. (Tr. 29, 66). However, J.R.J.'s teachers reported that her "periodic checkouts" were to attend "appointments due to her illness," indicating that they were predetermined and not the consequence of sudden headaches. (Tr. 294).

The record further shows that J.R.J. reported her headaches to Dr. Fu in 2008, who did not prescribe any additional medication or diagnose the headaches as migraines. (Tr. 280). Dr. Fu did order an MRI, which was reported to be an "unremarkable MRI of the brain for [J.R.J.'s] age." (Tr. 275). This is consistent with the MRI conducted in 2005 by Dr. Alberto Marante, who also did not diagnose J.R.J. as suffering from migraine headaches. (Tr. 250). Since there is no medical evidence to establish J.R.J.'s headaches as an impairment, or evidence otherwise demonstrating that the headaches more than minimally interfere with J.R.J.'s school or other activities, the ALJ's determination that J.R.J.'s headaches are not a severe impairment is supported by substantial evidence.

## 2. Domain Functioning Analysis

In order for a minor claimant's severe impairment(s) to functionally equal a listing, the ALJ must find an "extreme" limitation in one domain of functioning or a "marked" limitation in two or more domains of functioning. (*See* Statutory and Regulatory Framework, *supra*). The claimant asserts that "the ALJ picked and chose and did not fully consider all of the evidence" in reaching his determination that J.R.J.

is not disabled. (Doc. 8 at 12). However, the ALJ is not required to reiterate all of the objective findings from every medical source in making his decision. *Holt v. Astrue*, No. 2:07-CV-1122-VEH, slip op. at 11 (N.D. Ala. Mar. 28, 2008), citing *Dyer v. Barnhart*, 395 F. 3d 1206, 1211 (11th Cir. 2005) (There is "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, ... is not a broad rejection of the evidence which is not enough to enable [the district court] ... to conclude that [the ALJ] considered [the claimant's] medical condition as a whole."). The ALJ's findings of either "less than marked" or "no" limitations in all domains of functioning are supported by substantial evidence.

*a. First Domain*

The ALJ found that J.R.J. has less than marked limitation in acquiring and using information. (Tr. 89). This is supported by the neuropsychological evaluations performed by Drs. Marullo and Patterson, who diagnosed J.R.J. with cognitive disorder not otherwise specified and with associated impairments in executive functioning (*i.e.* working memory, attention, and organization). (Tr. 247). They concluded that J.R.J.'s condition did not meet the criteria for a learning disability. *Id*. This level of functioning is supported by J.R.J.'s middle school transcript, which states that during the sixth and seventh grades J.R.J. made A's, B's, C's and one D. (Tr. 281). J.R.J.'s teachers noted that she participated in peer-to-peer math tutoring

and considered her "mildly limited" in this domain of functioning. (Tr. 289, 298). Drs. Whitney and Rankart concluded that J.R.J. has a less than marked limitation in this domain. (Tr. 191). Therefore, there is substantial evidence to support the ALJ's finding of less than marked limitation in acquiring and using information.

*b. Second Domain*

The ALJ determined that J.R.J. has less than marked limitation in attending and completing tasks. (Tr. 90). Ms. Rice testified that J.R.J. is forgetful and reported that she cannot finish tasks without help. (Tr. 59, 154). J.R.J.'s teachers noted that she has an "obvious problem" in working on and completing certain tasks and considered her "mildly limited" in this domain. (Tr. 290, 298). Drs. Marullo and Patterson opined that J.R.J.'s seizure disorder and medication "have negatively impacted her attention and memory skills" and recommended modifications in "her school and home environments increasing structure, breaking down large tasks, and decreasing dependence on language processing when completing tasks." (Tr. 247, 249). However, they also concluded that J.R.J. did not meet the criteria for an attention disorder. (Tr. 247). Drs. Whitney and Rankart, noting Ms. Rice's claims, concluded that J.R.J. has no limitation in this domain. (Tr. 191). Together with the claimant's grades, this constitutes substantial evidence in support of the ALJ's finding of less than marked limitation in attending and completing tasks.

*c. Third Domain*

The ALJ concluded that J.R.J. has no limitation in interacting and relating with others. (Tr. 92). Ms. Rice testified that J.R.J. did not have many friends, though she did not consult a physician or psychiatrist regarding this issue. (Tr. 56-58). Ms. Rice and J.R.J.'s aunt reported that J.R.J.'s speech was at times difficult to understand. (Tr. 149, 158). Dr. Marullo reported that the claimant "was friendly and talkative, and her speech was clear and understandable." (Tr. 243). Her teachers reported no problems and no limitation in this domain. (Tr. 291, 298). Drs. Whitney and Rankart found no limitation in this domain. (Tr. 191). Thus the ALJ's finding of no limitation in interacting and relating with others is supported by substantial evidence.

*d. Fourth Domain*

The ALJ found that J.R.J. has no limitation in moving about and manipulating objects. (Tr. 93). No testimony, medical evaluation, or written report contradicts this finding; further, Ms. Rice does not challenge this finding. Therefore, the ALJ's determination regarding the fourth domain is supported by substantial evidence.

*e. Fifth Domain*

The ALJ found that J.R.J. has no limitation in caring for herself. (Tr. 94). Ms. Rice reported that J.R.J. cannot wash and put away her clothes or cook a meal for herself. (Tr. 153). The ALJ determined that these skills "are not necessities for a

13

child of her age to be able to do in order to take care of herself." (Tr. 94). None among the series of child specialists who evaluated J.R.J. reported any deficiency in her ability to take care of herself as befits an average child her age. Thus the ALJ's finding that J.R.J. has no limitation in caring for herself is supported by substantial evidence.

### f. Sixth Domain

When a claimant has alleged several impairments, the Commissioner has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled. *Jones v. Dept. of Health and Human Services*, 941 F.2d, 1533 (11th Cir. 1991). While the ALJ did not find the headaches to be a severe impairment, he did consider them in combination with those conditions he found to be severe impairments in his evaluation of the sixth domain: health and well-being. Explicitly including the headaches with J.R.J.'s seizure disorder and cognitive disorder, not otherwise specified, the ALJ found that J.R.J. has less than marked limitation in health and physical well-being. (Tr. 95). The claimant's treating physician recognized that her seizure disorder is "relatively well-controlled" on Trileptal. (Tr. 205). Further, the claimant testified that she is able to play and run without incurring a seizure, so long as she does not become overheated. (Tr. 26-28). Based on the infrequency of her seizures and of her scheduled neurologist

examinations, Drs. Whitney and Rankart concluded that J.R.J. has less than marked limitation in health and physical well-being. (Tr. 192). The recommendations to treat the claimant's cognitive disorder not otherwise specified involve basic structural adjustments to her school and home environments in combination with tutoring, but fall short of special education services. (Tr. 247-49). The ALJ balanced J.R.J.'s actual limitations with the effect they have on her daily life. Thus his finding that J.R.J. has less than marked limitation in health and physical well-being is supported by substantial evidence.

### B. The ALJ applied the correct legal standard in determining that J.R.J. was not disabled.

Ms. Rice asserts that "improper legal standards were applied." (Doc. 8 at 3). The proper legal framework for determining whether a claimant is disabled is set forth above in this opinion. (*See* Statutory and Regulatory Framework, *supra.*)

The ALJ applied the proper legal methodology in concluding that J.R.J. is not disabled within the meaning of the Social Security Act. The ALJ first found that J.R.J. has never been employed, satisfying the first element. (Tr. 82). The ALJ then found that J.R.J. has severe impairments, as required by the second element. *Id*. Then he determined that J.R.J.'s impairments neither meet, medically equal, nor functionally equal an impairment listed by the Secretary. (Tr. 83). Because the ALJ

appropriately applied the statutory disability framework for children and correctly considered the requirements needed to find a functional equivalent to a listing, he did not err in making his determination that J.R.J. was not disabled.

## CONCLUSION

Based on the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and applies the proper legal standards. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 2nd day of November, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge